848 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re S.S.S. OF KENTUCKY, INC., Debtor.
Michael J. CLARE, Trustee, Plaintiff-Appellant,
v.
S.S.S. OF KENTUCKY, INC. and Whel, Inc. Defendants-Appellees.
 No. 87-5526.
 United States Court of Appeals, Sixth Circuit.
 May 25, 1988.
 
 BEFORE WELLFORD, DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Michael J. Clare, the trustee in bankruptcy for the debtor, S.S.S. of Kentucky, Inc., appeals an order of the district court which affirmed orders of the bankruptcy court having the effect of allowing the unsecured claim of WHEL, Inc., in the amount of $30,927.96.
 
 
 2
 The debtor had owned and operated a radio station, which it purchased from WHEL for approximately $117,000. The debt to WHEL was secured by a mortgage on the station's real estate and fixtures (primarily a transmitting tower), and by a security agreement covering its personal property.
 
 
 3
 During the bankruptcy proceedings, the bankruptcy court approved the sale of the station to Agape Communications for $1,000, subject to all liens and claims of creditors. Agape apparently continued to make to WHEL the monthly payments of $1,250 required by the original note from the debtor, S.S.S.
 
 
 4
 Eventually, WHEL filed a proof of claim for the unsecured portion of the debt owed it, and the trustee objected.
 
 
 5
 In its Unsecured Proof of Claim, dated December 17, 1984, WHEL claimed that the total balance due it from the debtor was $55,927.96, and that when the $25,000 value of its collateral was deducted, $30,927.96 was the net value of its unsecured claim. The total value of the debt noted on that proof of claim is about $1,000 higher than WHEL said was due it on January 20, 1984, according to a Statement of Accounting it filed on March 29, 1985. That accounting also noted that $17,500 had been received from Agape, but did not indicate that it had been credited against the total debt. In his December 6, 1985 motion to require WHEL to amend its claim, the trustee noted that WHEL had received at least $27,500 from Agape by that time, and had not deducted that amount from the debt. If $27,500 were to be deducted from the $55,927.96 WHEL said was due, the amount of its unsecured claim--using its valuation of the collateral--would be reduced to less than $3,500. The amount which should be attributed to the unsecured claim is critical, as it appears that there will be sufficient assets to pay that claim.
 
 
 6
 Unfortunately, it is impossible for us to review the propriety of the court's decision in this regard, because the bankruptcy court summarily overruled the trustee's motion without stating any basis for its decision, even though the trustee had requested findings of fact and conclusions of law.
 
 
 7
 The trustee also appealed to the district court from the bankruptcy court's adoption, again without stating any reasons on the record, of WHEL's valuation of its collateral. We have reviewed the appraisal submitted by WHEL and compared it with the one submitted by the trustee. WHEL's appraisal consisted of a one-page letter from a realtor, dated August 2, 1983, stating his opinion that the real property was worth $19,000, based upon its highest and best use as residential property. He did not mention any fixtures or personal property. By contrast, the trustee presented a well-documented appraisal, dated March 1, 1985, from a qualified appraiser who valued the real estate at $28,000 based on continued use as a transmitter station being its highest and best use. His appraisal included comparable sales. The transmitting equipment was valued at $18,500, resulting in a total appraisal of $46,500. Accepting an undocumented appraisal of $19,000 and adding to it a $6,000 estimate from counsel as the value of the personal property, in order to arrive at a total valuation of $25,000 for the collateral, while rejecting the trustee's well-documented appraisal, all without stating any reasoning on the record, was clearly erroneous.
 
 
 8
 Obviously, had the trustee's evidence of the value of the collateral been accepted, the value of the unsecured claim would be reduced markedly, by $21,500.
 
 
 9
 The order of the district court is vacated, and this cause is remanded for further proceedings consistent with this opinion.